Filed 2/24/22  In re S.P. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re S.P., a Person Coming Under the Juvenile Court Law. | C093725 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY , <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.P., <br><br> Defendant and Appellant. | (Super. Ct. No. STK-JV-DP-2018-0000453) |

C.P., mother of the five minors (mother), appeals from orders of the juvenile court terminating her reunification services and ordering a permanent planned living arrangement as the permanent plan for her seven-year-old daughter S.P.  (Welf. & Inst.

Code, §§ 366.21, subd. (f), 395.)[1]  Mother contends the juvenile court erred in finding that the San Joaquin County Human Services Agency (the Agency) provided her and the minors with reasonable services tailored to their needs.  We will affirm the orders of the juvenile court.

                                    BACKGROUND

In November 2018, the Agency filed a petition on behalf of C.P., Jr., (born December 2007), Jo.P. (born December 2009), S.P. (born June 2013), Ja.P. (born July 2014), and N.P. (born May 2017), alleging that the minors came within the provision of § 300, subdivision (b), failure to protect, and § 300, subdivision (j), abuse of sibling.

On October 29, 2018, the Agency investigated a referral regarding alleged physical abuse of S.P.  The investigating social worker spoke to then five-year-old S.P. about a visible bruise over her eye, and S.P. reported that mother hit her.  The social worker also spoke to one of S.P.'s older brothers, Jo.P., who reported that he, his mother, and some of his siblings were hit by his father, Ch.P. (father).  However, he claimed that S.P.'s eye injury was due to an insect bite.  The social worker also spoke with mother and father.  Father became agitated during the interview, vocally denying that his children were abused; mother denied hitting S.P. and stated that S.P.'s swollen eye was due to an insect bite.  Father's behavior continued to escalate to the point of yelling and pounding on a door, behaviors mother described as ''normal."  Mother promised to seek medical treatment for S.P.'s eye and named two caseworkers at Valley Mountain Regional Center (VMRC) she could reach out to for assistance.

The social worker subsequently discovered that law enforcement was dispatched to the family's home after father allegedly hit mother in the face.  Stockton police officers helped mother obtain an emergency protective order against father, but mother admitted to the social worker that she had allowed father back into the home.  The social worker

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

advised mother of an upcoming care plan meeting at the Agency and told mother not to allow father in the home until the meeting took place. At the care plan meeting, mother and father discussed issues concerning domestic violence, untreated mental health issues for father, mother's medical condition, and neglect of the children. The parents admitted that father continued to live in the family home. Following the meeting, the Agency assessed the children as being at risk, obtained a protective custody warrant, and the children were removed from the parents.

At a November 19, 2018 detention hearing, the juvenile court ordered the children detained. Prior to an April 24, 2019 jurisdiction hearing, the Agency filed an amended petition, removing allegations against mother of physical abuse. Mother waived her right to a hearing on the amended petition. The court accepted her waiver and submission and sustained the amended petition. Father contested the allegations, and a contested jurisdiction disposition hearing was scheduled.

The Agency filed a combined jurisdiction and disposition report on May 22, 2019. The report noted that the minors were exposed to ongoing inappropriate discipline, domestic violence, and neglect. The report indicated that mother and father suffered from learning disabilities. The parents had been referred to services and mother was engaged in parenting classes and individual therapy. Mother had completed seven of 12 parenting classes and was participating "effectively" in therapy, though the therapist believed mother did not appreciate the severity of the events leading to the children's detention, noting that mother's learning disability impacted her ability to process information. As no bypass provisions applied to the parents, the Agency recommended reunification services for them. Mother's reunification plan required her to complete a parenting course, continue in individual counseling, and undergo a medication evaluation. The Agency recommended couple's counseling for the parents as well.

Only mother appeared on June 26, 2019, for the disposition hearing. Upon submission of the matter, the juvenile court adjudged the children to be dependents and

3

ordered them removed from parental custody. The court adopted the Agency's recommended findings and orders and scheduled a six-month status review hearing.

The Agency's November 27, 2019, status review report showed that mother's and father's visits with S.P.'s siblings remained supervised but were split because of an active restraining order. The report showed that visitation was inconsistent, with mother attending 10 out of 19 possible visits. The report showed that father had not addressed any of his anger management, domestic violence, and substance abuse issues. Despite the active restraining order and father's lack of progress, mother continued to maintain regular contact with father, which demonstrated a lack of protective capacity. The report showed that mother completed parenting classes, individual counseling, and had remained medication compliant. However, mother maintained a relationship with ongoing domestic violence and anger outbursts from father. The social worker reported witnessing a hostile interaction between mother and father and attempted to intervene. The report showed that, despite completing parts of her case plan, mother's behaviors had not changed, and she continued to demonstrate an inability to protect the minors or herself. The Agency recommended terminating mother's and father's reunification services.

At the December 3, 2019 dependent review hearing, mother's counsel requested the appointment of a guardian ad litem for mother; the juvenile court granted the request. At the January 14, 2020 contested dependent review hearing, the Agency advised the court that it was no longer recommending the termination of mother's reunification services, but that services be continued to the 18-month review hearing. The Agency explained that mother completed individual counseling in July 2019, but concerns remained regarding her ability to be protective of the minors and that those concerns were again shared with mother's therapist. Mother's therapist did not believe she would benefit from more therapy and recommended a psychological evaluation to determine what additional services could benefit her. The Agency asked that visitation with S.P.

4

remain suspended but supervised visits between mother, father, and the other minors be continued. The court then added the psychological evaluation to mother's case plan for the purpose of gathering information to determine what additional services would be needed, suspended visitation with S.P., and ordered the restraining order to remain in effect.

On February 10, 2020, the Agency filed a section 342 subsequent petition adding on the allegation of sexual abuse based on a disclosure made to S.P.'s therapist. At the hearing on the subsequent petition, the juvenile court determined that the sibling group had different permanent plans and appointed minors separate counsel. The Agency then advised the court that mother missed the psychological evaluation appointment because she was not at the address on file and not responsive to phone calls when the social worker arrived to transport her. At the March 10, 2020 jurisdictional hearing on the petition, the Agency advised the court that mother missed a second scheduled psychological evaluation but continued to receive reunification services.

On May 18, 2020, the Agency filed the jurisdiction report that showed that mother did not believe the allegations against father in the section 342 petition. Subsequently, the juvenile court found a factual basis for the allegations and that the allegations were true. The Agency reported that mother missed three psychological evaluation appointments and that transportation was arranged, but mother was not at the address she provided. The court then explained to mother that this would be the last attempt to schedule the appointment and that it was important for her to attend.

The Agency's July 6, 2020, disposition report showed that the minors could not safely be returned to mother because she had not demonstrated that any of the issues that led to their removal had been resolved. The report showed that throughout the 12 months of the dependency, mother's visits with the minors were inconsistent with several no call/no shows and cancellations, and on May 4, 2020, her visitation ceased due to three consecutive no calls/no shows and had not resumed. The report showed that mother

5

completed parenting education and individual counseling components of her reunification case plan, but concerns remained that she did not benefit from the services due to no change in her behavior and because she continually missed her appointments for a psychological evaluation. The report showed that mother did not provide the Agency with the correct release of information to verify her medication compliance and did not consistently maintain contact with the social worker. In addition, mother continued to disregard the restraining order and maintained contact with father. The report showed that, despite being one year in the dependency, mother's visits had not progressed beyond being supervised; accordingly, the Agency recommended termination of mother's reunification services.

At the July 7, 2020 dispositional hearing, the juvenile court ordered a referral for mother's psychological evaluation. At the September 29, 2020 dispositional hearing, the court granted the Agency discretion to increase visitation for mother. The Agency's February 10, 2021, interim review report showed that mother completed the psychological evaluation and was diagnosed with a mild intellectual disability, generalized anxiety disorder, posttraumatic stress disorder, and dependency and avoidant personality features. The evaluating doctor reported that mother would continue to struggle with effectively parenting the minors due to impaired intellectual and reasoning capabilities. The report recommended termination of reunification services as to mother with long-term foster care as the permanent plan for S.P.

At the February 16, 2021 contested dispositional hearing, mother testified that she learned to protect the minors from harm in the parenting classes she completed and developed a safety plan. She testified that, as part of her safety plan, she obtained a restraining order against father and did not have contact with him. In subsequent testimony, she admitted that she violated the restraining order "a couple of times," immediately after it was issued in January 2019 as well as other occasions in 2019 and

2020. She testified that she was consistently visiting the minors. Mother also indicated that she did not believe the allegations that S.P. was molested by her sons.

At the conclusion of testimony, the Agency advised the juvenile court that the minors were detained in November 2018, which meant the dependency case was over 24 months. The court explained that it needed to consider mother's ability to parent all of the minors with their varying needs. The court noted that mother obtained a restraining order but violated it numerous times. The court expressed concern that mother's statements to the evaluating doctor showed that she considered continuing her relationship with father and noted she had not gone forward with a divorce. The court acknowledged it would be difficult for mother to separate from father due to the length of their relationship, but the court stated that the dependency had reached 24 months and "[w]e have no time to further explore that." The court also noted that while the psychological evaluation came later, the evaluating doctor found that all of the services offered to mother were appropriate. The court also observed that visitation had not progressed beyond being supervised twice a week for one hour. The court stated that after considering all of the evidence and the fact that the dependency was at two years, no additional time remained. Accordingly, the court terminated mother's reunification services with a planned permanent arrangement for S.P.

Mother filed a timely appeal.

DISCUSSION

Mother contends the juvenile court erred in finding the Agency made reasonable efforts to provide her services tailored to her needs and terminating reunification services. Specifically, mother argues that because the Agency failed to provide services that addressed the reasons for the removal of the minors, the juvenile court should have extended services to her beyond the statutory limit of 24 months due to extraordinary circumstances. We disagree.

7

If the juvenile court does not return the minor to his or her parent at the review hearing, it "shall determine whether reasonable services that were designed to aid the parent . . . in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent . . . ." (§ 366.21, subds. (e)(8) & (f)(1)(A).)  A finding that reasonable services were offered or provided to a parent is supported when the record shows that the " 'supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult.' [Citation.]  The 'adequacy of reunification plans and the reasonableness of the [agency's] efforts are judged according to the circumstances of each case.' [Citation.] Reunification services should be tailored to the particular needs of the family.  [Citation.] The social services agency must make a 'good faith effort' to provide reasonable services that are responsive to each family's unique needs.  [Citation.]  'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*In re J.E.* (2016) 3 Cal.App.5th 557, 566.)

The juvenile dependency scheme generally limits the time a parent has to receive reunification services.  In a dependency proceeding, when one member of a sibling group is under three years of age at the time the siblings are removed from parental custody, reunification services may be limited to no longer than 12 months from the date the sibling group entered foster care.  (§§ 361.5, subd. (a)(1)(B)-(C), 361.21, subd. (f).) Juvenile courts can continue reunification services to a maximum time of 18 months, only when it finds there is a substantial probability that the minors will be returned to parental custody and safely maintained in the home within that extended period of time. (§§ 366.21, subd. (g)(1), 361.5, subd. (a)(3)(A).)  A court may extend services to a maximum period not to exceed 24 months, only if it finds that it is in the minor's best

8

interest to extend the time and there is a substantial probability that the minor will be returned and safely maintained in the home within the extended time or that reasonable services were not provided. (§ 361.5, subd. (a)(4).) "Notwithstanding these statutory limits on reunification services, a juvenile court may invoke section 352 to extend family reunification services beyond these limits if there are 'extraordinary circumstances which militate[] in favor of' such an extension. [Citations] Extraordinary circumstances exist when 'inadequate services' are offered by the child welfare agency or 'an external force over which [the parent has] no control' prevented the parent from completing a case plan." (*In re D.N.* (2020) 56 Cal.App.5th 741, 762.)

Here, the minors were removed from mother in November 2018 as a result of mother's inability to provide any protection to minors from the abuse suffered by S.P. and Jo.P. and domestic violence in the home. In February 2020, the petition was amended as to S.P. to add allegations of molestation, of which, the minor indicated mother was aware. The record shows that this family had a long history of contact with the Agency, and mother received services and saw a therapist through VMRC for anxiety and depression prior to the removal of the minors. When the minors were removed from the home, mother received a reunification case plan that consisted of compliance with court orders, parenting education, individual counseling, couples counseling, and medication evaluation and compliance. While mother completed counseling, she maintained contact with father in violation of the restraining order, failing to demonstrate an ability to protect minors.

The record does not support a finding that reunification services provided to mother were in any way unreasonable. On the contrary, the record shows that the juvenile court made extensive efforts to get mother a psychological evaluation after she missed appointments and continued visitation for her with the minors even after she missed a number of visits. The record shows that the delay in the psychological evaluation was caused by mother's failure to provide her correct address and not being

9

available when the Agency arrived to transport her to the appointment. Despite multiple opportunities, mother failed to make substantial progress. She obtained a restraining order but violated it numerous times. She made statements to the evaluating doctor indicating that she considered continuing her relationship with father and had not gone forward with a divorce. She indicated she did not believe S.P.'s molestation allegations. Her visitation with the minors had not progressed beyond being supervised twice a week for one hour. Mother was provided ample services to her needs for two years and there were no other reasonable services to be provided as part of her case plan. The record shows that the services provided to the minors were reasonably tailored to their specific needs.

<strong>DISPOSITION</strong>

The orders of the juvenile court are affirmed.


                                              \s\                    ,
                                        BLEASE, Acting P. J.



We concur:



        \s\              ,
HULL, J.



        \s\              ,
RENNER, J.


10